In the United States District Court
For the District of Delaware

Sharon Shannon          CU-06-522 GMS.

Plaintiff

V

Paul Lardizzone
D'Mark Wischmann
and Dorothy Zashner

Defendants

Sharon Shannon
239 Loon Ct.
Frederica, De. 19946
Oct. 20, 07

1:06-CV-522 GMS

Your Honor Judge Gregory M Sleet

I Sharon Shannon Plaintiff, strongly believe this case should be awarded in my favor because of the following facts.

On 2-11-04, coming back from V.A.M.C. to Dover area in the D.A.V. van, I finally defended myself after approximately fifteen minutes of verbal abuse from Mr. Ed. White. The way this individual was talking to me, he couldn't have been a man. Mr. Bevels testified on page three, transcript from Division of Human Relations Hearing " Mr. White was cursing her out, you know and calling her bitches and all of that."

The very next day 2-12-04, I defended Veteran Mr. Bonnie Bevels an African American man / Volunteer driver for D.A.V. van because of statements made by Mr. Roy Stanfield. I would not hesitate to defend him again, and a few days later, Mr. Bevels asked me for a statement he said for N.A.A.C.P.

IN 7-2004 I was treated badly along with Virginia Taylor when we attended the state D.A.V. convention.

On July 19, 2004 Virginia Taylor visited my home giving me a statement

1:06-CV-522 GMS

The statement is in reference to a conversation between the three defendants Mr. Paul Lardizzone, Mr. H. Mark Wischmann and Ms. Dorothy Zashner on why I should not be married to an African American, also why I should not ride the D.A.V. van to V.A.M.C. The conversation took place in June 2004 at the state convention, the first night being held at the D.A.V. building in Camden, Delaware.

This statement explains why Virginia Taylor and I were treated so badly at the remainder of the convention being held at the Sheraton Dover Hotel.

On September 4, 2004 I received a certified letter from D.A.V. Unit I in Camden, Delaware, signed by Mr. H. Mark Wischmann and Mr. Paul Lardizzone stating I was restricted from the D.A.V. property and all D.A.V. activities.

From the time of the two incidents on the van until I received the certified letter September 4, 2004, I was not contacted by any member from D.A.V. or D.A.V.A. to ask my side of what happened. I was not given a hearing which the D.A.V. is supposed to do according to the by laws before they can exclude a member.

III

I contacted Division of Human Relations, there was a hearing December 2, 2004. Mr. H Mark Wischmann testified page (116) one hundred sixteen, transcript for Division of Human Relations that he had contacted Nationals in Cold Spring, Bentucky and state executive committee presenting the facts to them, everything everyone had to say to excerde me but not my facts. There certainly must have been some documents of D.H.V. facts to substantiate my exclusion from the D.H.V. When I requested in the discovery period for any statements from the defendants I was denied. Part of the decision from Division of Human Relations was, it would be my decision if I would want to contact Federal authorities.

I contacted U.S. Dept. of Justice in Washington, their office kept the case several months, then transferred the case to Department of Veterans Affairs in Washington. The U.A. notified me there wasn't any discrimination with the D.A.V. I realize these two departments didn't have all the facts when rendering a decision.

I even contacted the A.C.L.U. in Wilmington, they could not assist me.

1:06-CV-522 GMS.

IV

It was my last chance to receive justice for my Viet Nam Veteran husband Jessie Shannon, so thats why I filed Pro se in the United States District Court In The District of Delaware.

The four ladies, mrs. Virginia Taylor, Ms June Foldi, Mrs. Ruth McBride, Ms Anita Bowhall and I can't forget Mr. Donald Inskip who stepped up to the plate and told the truth in their statements should tell it all.

The three defendants, Mr. Paul Lardizzone Mr. H Mark Wiselmann & Ms Dorothy Koshner used the two incidents on the D.A.V. van to exclude me from the D.A.V, when the real reason was because I was married to my husband Jessie and that he was an African American.

It is unfortunate that this happened to me, and late in my life, and I have never been so hurt, humiliated, intimidated and stressed because of all this but I'm giving it the fight of my life to respect and protect my deceased husbands name, race and honor in which he gave to his country on July 11, 1966.

In this day of racial equality this was unreal to live through these last three

X

years. It has been very embarrassing and so trifling to mention a few almost to the point of nit picking when they didn't even follow their own by laws and their own procedures. I would like to end with a most comforting thought, When I see the American flag I see my courageous husband Jessie, he is my flag. I will hold him up high, I will never let him fall. If it please the court, please don't let Jessie fall either and give Jessie the justice he so deserving.

Sharon Shannon
239 Loon Ct.
Frederica, De. 19946
Oct 20, 2007

Note —
my pennanship is not so good these days, I'm having surgery on my wrists and thumbs at my discretion.

1:06 - CV - 522. GMS.

Certificate of Service

I hereby certify that I have
caused copies of the following

a Summary for Judgement
to the Honorable Judge Gregory M. Sleet

to be served upon William D. Fletcher Jr.
414 S. State St.
PO Box 497
Dover, De. 19901

by first class mail by mailing
copies to defendants at their attorneys
address listed above postage pre-
paid Oct 30, 07

Sharon Shannon
239 Loon Ct.
Frederica, De 19946

1:06-CV-522
CMS

USA

July 19, 04

On June 25, [04] at the convention
for DAVA & DAU building in Camden,
Delaware I overheard Dorothy Zashnee,
Paul Lardizzone & Mark Wischmann
talking about Sharon Allen Shannon. They
were not aware I was listening.

It was a three way conversation about
Sharon Allen Shannon being married to
a black man and that she was very proud
of this.
All three agreed it was awful and they
weren't going to have anything to do with
her at all. Furthermore that she
should not be proud of this and that
she is a nothing at all.

They also discussed that Sharon Shannon
should not be allowed to ride on the
van to Wilmington VA Medical Center,
because she remarried after her husband
was killed & because she wasn't a Veteran,
and because her husband was black.
When they suddenly observed me listening
they stopped talking and seperated quickly.
Sharon Shannon    Virginia L Taylor
      for        302 697 9161

1:06-CV-522 G.MS.



### Department of Delaware
# DISABLED AMERICAN VETERANS
### P.O. Box 407 - Camden, DE  19934 - (302) 697-9061

FROM: Commander/Adjutant                                    AUG 27, 2004
Disabled American War
Department of Delaware

SUBJECT: Restriction from DAV / Dept of De
Property, meetings and conventions

TO: Sharon Shannon

Ms. Shannon, this letter is to notify you that you are restricted from the property of the
Department of Delaware Disabled American Veterans. This is to include the DAV property
located at 183 South Street in Camden Delaware, any meetings or functions held by the Dept of
De DAV and the Dept of De DAV convention. This action is being taken because of your
conduct and remarks to our dispatcher and drivers. These actions violate Article 16 section 16.1
Para 1( c ) of the DAV National Constitution , By Laws, and Regulations, which states the state
commander may recommend to the state executive committee that it reprimand, suspend,
transfer, or expel a member for conduct not conducive to the best interests of the Organization, or
contrary to the maintenance of proper order and decorum within the Organization. If you attempt
to violate this you will be asked to leave or be removed by the local police.


H. Mark Wischmann                         Paul V. Lardizzone
Commander                                 Adjutant
DAV Dept of De                            DAV Dept of De

cc: Sharon Shannon
    Dept of De DAVA Commander
    Dept of De DAVA Adjutant
    Dept of De DAV Judge Advocate

I  Addendum  to:  06  C.vil 522

Aug 28, 06

During the time I made the complaint to Division of Human Relations, I was very upset so I would like to explain the two incidences on DAV van to VA Medical Center, Elsmere.

The driver Ronnie Revels, left van running in front of VAMC, west inside hospital, I was in van. Mr. Revels mentioned I was the only patient going back. While waiting a man, Mr. White (whom I did not know) approached the van, I was trying to unlock doors, Mr. White was pulling on handle sometime. Mr. White told me crawl in the back & unlock door, I replied I can't, I have to have my hip replaced. Mr. White then went to drivers side and the door opened. Mr. White was boarding the van & I asked him, Sir, are you aware this van is going to Dover? Mr. White replied, Don't worry about where this M F van is going you M F W B. I'll own this M F van before you do. Needless to say I didn't say another word to him but he kept

1:06-CV-522 GMS.

II talking using terrible profanity. I wanted
to get security, but I didn't know if I could
get into trouble leaving Van while running
or taking the keys, being a government
vehicle.

Finally Mr. Reviles returned, I told him
this gentleman is very upset and I didn't
know where he's coming from. Mr. Reviles
didn't say anything, Mr. White kept talk-
ing the same way. Mr. Reviles made a
stop near hospital I was getting out
of Van Mr White said you are "M 7 W B,
I felt as though I heard enough, I
replied, Well let me tell you one thing
boy I'm a good one.

All the way back to Dover, Mr White
never said another word to me.

The people in DAV never asked my
side of this, just believed everything Mr.
White said. The DAV didn't follow
laws & byelaws.

Second incident - Very next day -
coming back patient Ray Stanfield
was mentioning he would have room
for riders going to convention in
Atlantic City New Jersey. Our driver

1:06 - CV - 522 G.M.S.

III Mr. Revels said he would like to
catch a ride. Mr. Stanfield said yes
Bonnie I'll tie you to my back bumper
& drag you up there. Mr. Stanfield
sounded sincere, I asked what did
you say?, Mr. Stanfield said, Ronnie
knows when I'm kedding, Bonnie re-
plied no I don't.
   I added thats a terrible thing to say
to someone, that really happened to
a man in Texas, the man died. There
are supposed to be two or three pending
time for that hate crime. End of
conversation. I was last patient to
depart van, Mr. Revels asked if I
would give him a statement for
N.A.A.C.P., & I did.
   The DAV people never asked my
side of this either, I received a
certified letter, written Aug 27,04 excluding
me from the DAV Organization In-
cluding the Van. I was missing alot of
appointments for therapy because of
having my hip replaced.
   I have always been nice to all
people in the DAV, profanity is not

1:06-CV-522 G.M.S.

IV in my vocabulary. Profanity is not allowed on the van. Mr. White & Mr. Stanfield were never restricted from the van.

I am sixty four years old, I became a member of DAV auxiliary in 2003, after moving to Delaware in 2002 to live my remaining years, and someday I will be buried next to my husband in Arlington National Cemetery, Who gave his life proudly for United States Of America.

Sharon M Shannon

1:06-CV-522 GMS.

This Statement was
Written by Mr. Donald Inskip

actually happened Aug 3 04
on Van 1 18

OCT 11 2004

I AM WRITING THIS
STATEMENT AS TO WHAT
TRANSPIRED ON THE
DAV BUS THAT WAS TRANSPOTING
SHARON MYSELF + 1 ISRIA
TO THE WILMINGTON VA
FOR OUR DR'S APPOINTMENTS
SHARON AND I WERE
WAITING FOR THE BUS AT THE
MAGDOLIA FIRE HOUSE.
WHEN THE BUS ARRIVED
ISAIA WAS IN THE FRONT
SEAT. WHEN SHARON AND
MYSELF WENT TO BOARD THE
BUS ISAIA INSITED THAT
SHARON SIT IN THE FRONT
SEAT AND HE WOULD RIDE
WITH ME IN THE BACK
WHEN WE WERE DONE
WE WERE WAITING FOR THE
BUS DRIVER TO BRING THE

1:06 - CU - 522 G.M.S.

BUS AROUND FOR THE
RETURN TRIP. WHEN
SHE PULLED UP THERE WAS
ANOTHER WOMAN IN THE
FRONT SEAT WHOM WORKED
IN SOME CAPACITY FOR THE
V.A. AS SHARON WAS GETTING
READY TO GET ON THE BUS
IN THE FRONT SEAT THE LADY
WAS VERY BELIGERAT AND
TOLD SHARON THAT SHE
HAD RUN THE SHOW LONG
ENOUGH AND THAT SHE
WAS NOT IN CHARGE AT
THAT SHE (THE WOMAN) WAS
AND THAT THERE WAS
NOTHING WRONG WITH HER
AND THAT SHE WAS TO
RIDE IN THE BACK AND
THAT ISAIA WAS TO RIDE
IN THE FRONT. SHARON
HAD AN EXTREMLY HARD

1:06—CU—522 G.M.8.

3

GETTING IN THE BACK OF
THE BUS DUE TO HER
RECENT SURGY. THE
WOMAN KEPT INSISTING
THERE WAS NOTHING WRONG
WITH SHARON. I KNOW
THAT SHARON HURT HERSELF
GETTING IN THE BACK.
SHARON AT NO
TIME INSISTED SHE
RIDE IN THE FRONT SEAT.
MR ISAIA GAVE HER HIS
SEAT OF HIS OWN CHOICE
THE BUS DRIVER NOT
ONLY GOT LOST BUT
RAN A STOP SIGN ON THE
AIRBASE. WE ALL HAD TO
INFORM HER HOW TO GET
BACK TO THE FIRE HALL.
I HOPE THIS WILL CLEARLY
THE SITUATION
DONALD HINSKIP

302 335 1599   for Mr. Inskip

S.S

1:06 — CU— 522 GMS.

### BEFORE THE HUMAN RELATIONS COMMISSION
### OF THE STATE OF DELAWARE\

Sharon Shannon,                            )
                                           )
v.                                         )         Charge No. K-PA-630-04
                                           )
Delaware Disabled Veterans Association )

## DECISION AFTER HEARING

This matter came before the Human Relations Commission for a hearing on

December 2, 2004, in Dover, Delaware.

The panel members hearing the case were Marian Harris (Chair), Wallace Dixon,

and Gail Launay. Sharese McGhee was the Human Relations Representative from the

Division of Human Relations assigned to assist the Panel. Deputy Attorney General

Frederick H. Schranck acted as counsel to the Commission.

Ms. Shannon was represented by Kester I.H. Crosse, Esquire. The Delaware

Disabled Veterans Association (DAV) was represented by Kevin Howard, Esquire.

All parties were sworn and testimony was received from both sides.

The panel then recessed the hearing and reconvened at a later date to conduct its

deliberations.

### FINDINGS AND ORDER:

The panel's initial findings are dispositive of the case before it. The evidence

provided by both sides showed that the operations of the DAV shuttle van service run

were not open to the public. Instead, use of the DAV van (and, in fact the other DAV

facilities such as its clubhouse in Kent County, Delaware) is limited to DAV members,

veterans, family members of veterans, and invited guests. Ms. Shannon, for example, is a

widow of a Vietnam-era Marine, which qualified her to use the DAV van when she did.

*1:06-CU-522 GMS*

Under these circumstances, Ms. Shannon's complaint about her treatment by the DAV does not implicate the provisions of 6 Del.C. Chapter 45, the Delaware Equal Accommodations Law. This statute is enforced against organizations and other entities offering fully public access. See Section 4502(1). The parties' factual agreement as to the limitations of the DAV service thus takes the case out of the Commission's jurisdiction.

Therefore, this action must be dismissed.

Nonetheless, the Commission Panel members must also note for the record that they were disturbed at some of the hearing evidence, presented over several hours. Some of the attitudes and comments made by the parties and witnesses showed a distressingly immature approach to maintaining good relations with others. In addition, the Panel notes that the DAV services provided in this instance with the cooperation and coordination of the U.S. Departmen of Veterans Affairs may also implicate Title VI of the Civil Rights Act of 1964 with respect to those parts of the law relating to discrimination in programs supported by Federal expenditures. Any decision to bring this matter to the attention of the Federal authorities is, of course, up to either of the parties, and not the Commission.

SO ORDERED THIS __10th__ DAY OF __March__, 2005.

Marian R. Han
Marian Harris, Chair

Gail Launay, Panel

Wallace Dixon, Panel

*1:06-CU-522* **U.S. Department of Justice**

*G.M.S.* Civil Rights Division

---

*Coordination and Review Section-NYA*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

JUN 1 2005

Doc #231491

Ms. Sharon M. Shannon
239 Spring Valley
Frederica, DE 19946

Dear Ms. Shannon:

Your letter was received by the Coordination and Review
Section of the Civil Rights Division of the Department of
Justice. We have considered carefully the information you have
provided, but the matter does not appear to be within the
jurisdiction of our office.

However, by the enclosed letter, we have referred the
matter to the agency that is most likely to assist you. While I
do not know if they are in a position to intervene in this
matter, your position should be brought to their attention.
If you have any questions, please contact the U.S. Department of
Veterans Affairs at (202) 273-5888.

Sincerely,

Merrily A. Friedlander

Merrily A. Friedlander
Chief
Coordination and Review Section
Civil Rights Division

Enclosure

Judge
GMS.

**DEPARTMENT OF VETERANS AFFAIRS**
Veterans Health Administration
Washington DC 20420

APR 19 2006    ~~18~~ 2006

In Reply Refer To: 10A2E

## CERTIFIED MAIL

Ms. Sharon Shannon, Complaint No. 05-101-004
239 Spring Valley
Frederica, DE 19946

Dear Ms. Shannon:

Enclosed is a copy of my final decision for the Under Secretary for Health regarding your civil rights discrimination complaint against the DAV (Disabled American Veterans) in Camden, Delaware, on the basis of your racial affiliation (White, married to a deceased African-American Marine).

VHA (Veterans Health Administration) Directive 2002-037, Nondiscrimination in Federally-Conducted and Federally-Assisted (External) Programs, is an in-house policy that prohibits discrimination in Agency programs and activities. Claims regarding benefits, entitlements, or compensation are not covered under these programs. Our primary goal is to ensure nondiscrimination and take remedial action when necessary. Therefore, if you are dissatisfied with this Decision, the process does not provide for a higher-level appeal procedure.

The investigator vigorously pursued all leads that you provided to him, and several times he extended finalizing the attached report in order to contact additional witnesses you provided, or to receive information from them. The weight of the evidence fails to support a finding that you were discriminated against due to your race (racial affiliation). None of your witnesses had first hand, convincing knowledge of the allegations that gave weight to your allegations. In addition, the DAV official was able to refute the allegations in an articulate manner.

There are no corrective actions for VHA to take in this matter. However, I am concerned that for years the issues continues to fester without having closure in the near future. I am recommending that you and DAV officials seek mediation to resolve your disagreements and foster good relations.

Sharon Shannon

1:06-CV-522
Judge G.M.S.

Page 2

Ms. Sharon Shannon, Complaint No. 05-101-004

Good luck in your future endeavors.

Sincerely,

*Nevin M. Weaver*

Nevin M. Weaver, FACHE
Chief Management Support Officer

Enclosure

cc:  ORM (08)

Mr. Goff informed me he did not
discuss this case with Virginia Taylor,
a DAUA member for 22 years.
I don't believe Mr. Goff spoke with
Gladys Bishop, either.

To my knowledge he talked to the
three defendents + Ms. June Foldi.

*Sharon Shannon*

*1:06 — CU—522 CMS*

# aclu delaware

April 12, 2006

Ms. Sharon Shannon
239 Spring Valley
Frederica, DE 19945

Dear Ms. Shannon:

The ACLU of Delaware has received your request for assistance.  I regret to inform you that we are unable to offer you legal assistance in this matter.  Our decision is not a judgment on the legal merits of your case; rather, it is a realistic judgment based on our limited staff and resources.

The ACLU is not a general legal services clinic.  We are a private, non-profit organization with limited resources; therefore, we must be very selective in choosing our cases.  We generally handle cases that deal with issues of constitutional law, seeking to advance and preserve basic rights and principles spelled out in the state and federal constitutions.  Even among those types of cases, we can take only a small percentage of the many meritorious complaints that we receive.

Please understand that our inability to represent you is not a judgment on the merits of your case.  We simply do not have the resources to assist you.  Another agency or attorney might be in a better position to assist you.  We suggest you contact the Legal Help Link for an appropriate referral, at 302-478-8850.  In Kent and Sussex Counties, the number is 1-800-773-0606.

We are sorry that we cannot be of assistance to you, and we hope that you will be able to resolve this matter satisfactorily.  Thank you for contacting the ACLU.

Sincerely,

Diane Winters
Intake Representative
ACLU Delaware

1:06 - CU - 522 GMS.

February 1, 2007

Office of the Clerk
U.S. District Court
844 No. King Street
Lockbox 18
Wilmington, DE 19801-3570

    RE: 1:06-CV-522 GMS

TO WHOM IT MAY CONCERN:

    I am writing on behalf of Sharon Shannon of Magnolia, DE to let you know that I was a

driver for the D.A.V. Organization for seven years as a volunteer. I have on many occasions

picked up and brought Sharon Shannon to and from the VA Hospital in Elsmere, DE for

appointments she may have had.

    I never had any problems with her or anyone else have a problem with her who was riding

with me. She would sit where she was asked to sit and never bother with anyone. She was

very cooperative with me.

                      Sincerely yours,

                      Ruth N. McBride

                      Ruth N. McBride

RNM/rm
Copy!

                                               I

*1:06 — CU— 522 (Cml*

June C. Foldi
8436 Royal Hart Driver
New Port Richey, Fla 34653

To Whom It May Concern:
Ref: Federal Case # 060-522

As past commander of Disabled American Veterans Auxiliary Caesar Rodney Unit # 3 and an officer for the Department of Delaware Disable American Veterans Auxiliary for three years, I have come to know Ms. Shannon.

I first met Ms. Shannon at a combined D,A.V. and D.A.V. Aux. Convention June of 2004. She seemed to be a very personable lady .Ms. Shannon told me she was a member of D.A.V. Aux Unit #1. For some reason she and Virginia Taylor, also a member of unit #1 (at that time) , where not allowed to sit with their unit during the 2004 State Convention. I invited both ladies to be seated with my unit. Subsequently both ladies transferred in to my unit.

I learned at that time that Ms. Shannon's late husband was killed in action in Vietnam

When I asked Ms. Dorothy Kashner , who Ms Shannon was , she replied" Oh she's married to a black man".

In August of that year Ms. Shannon called me about a letter she received from the Department of Delaware Disabled American Veterans. The certified letter stated that she was not allowed on the D.A.V. property, participate in any D,A,V, activities or ride in the D,A.V. van to the Veterans Hospital . This letter had both signatures of H. Mark Wischmann (State Commander ) and Paul Lardizzone (State Adjutant).

I brought this matter to the attention of Ms. Kashner who was the State Adjutant in 2004 , Ms. Maria M. Tedrow (National Adjutant} and Ms Shelia Allred (National Judge Advocates ). **My pleas on her behalf fell on deaf ears.**

June C. Foldi

*March 29 07*
*88 .*

1:06-CV-522 GMS

To Whom It May Concern,

I am writing this statement in behalf Sharon Shannon. I have been active in the D.A.V.A. for some twenty seven years. I recently was second junior vice commander, in the D.A.V.A. from 2001 to 2003 of Unit 1 Dover branch.

I met Sharon Shannon at a D.A.V.A. meeting in 2003. We talked to eachother after several meetings, and got acquainted. My husband and I talked to Sharon about riding the D.A.V. van to V.A. hospital in Wilmington, De.. My husband was the van coordinator for the Dover area. Sharon would our home to see if there was a seat available, and she was always considerate of all the veterans she did not want to bump them off.

Mr. Reels (driver) stopped at our home to pick up the next day schedule for this van. Sharon was a patient on the van and Mr. Revels was going to drop Sharon off at the firehouse in downtown Magnolia.

Sharon was very upset about an incident that happened that day on the van with Mr. E. White.

A conversation took place between Mr. Revels and my husband Bradley E. Bowhall, Sr. now deceased, Sharon and I were present at the time. There had been problems in the D.A.V. regarding Mr. Revels, being refferd as the "token nigger" of the D.A.V. behind his back. It was being said by the commander and the adjutant of the D.A.V. Dover , De. Unit 1.

My husband was very upset because he stated they were doing the same thing to Sharon Shannon only she was being refferd to as the "nigger lover". Then Sharon's problems began. The commander told my husband not to let Sharon ride on the van. Then serious problems began, she was barred from riding the van for no good reason. This is against D.A.V. by-laws. The D.A.V. never talked to her about the incidents. Sharon Shannon was "black balled" out of the organizion.

*Anita D. Bowhall*  6/3/07

Anita D. Bowhall (D.A.V.A. Life Member
28 Cardington Court
Clayton, De.    19938
302-6591714



From:

Sharon Shannon
239 Leon Court
Frederica, DE 19946



U.S. POSTAGE
MAGNOLIA, DE
OCT 17 07
$1.48

TO: *Office of The Clerk*
*United States District Court*
*844 N. King St. Lockbox 18*
*Wilmington, Delaware*
*19801 3570*



## Handle with Care



**Scotch** Smart Mailer
Super Strong | Moisture Resistant